GREENLEE, J.,
FOR THE COURT:
¶ 1. Marlon Little appeals his convictions for armed robbery and felon in possession of a firearm. At trial, the only substantive evidence presented by the State was the victim’s eyewitness testimony. Little argues that the victim’s initial description of the assailant to police was so inconsistent with Little’s actual physical attributes that the verdict was against the weight of the evidence, requiring reversal. We agree and reverse and remand for a new trial.
FACTS AND PROCEEDINGS BELOW
¶2. On October 31, 2013, nurse practitioner Danny Ellis was robbed at gunpoint shortly after closing his Port Gibson office for the day. Ellis testified that the robber jumped him from behind and wrestled him to the ground. Ellis hit the attacker in the side of the head with his laptop. The robber put his knee in Ellis’s chest and held a pistol to his face, demanding his wallet. The man was wearing a hoodie with the string pulled tight across his chin. The upper portion of the hoodie obscured a portion of the attacker’s face. Ellis had never seen the man before. After the man took Ellis’s wallet and left, Ellis walked to the police station and reported the robbery to Port Gibson’s chief of police, Calvin Jackson. Initially, Ellis described the man who attacked him as a clean-shaven, stocky African American male in his mid-to-late twenties.
¶3. The police received a tip from an informant identifying Little as a suspect. Based on this tip, Jackson, who was familiar with Little, put together a seven-photo lineup on November 4, 2013, to show to Ellis. Ellis identified the man in the fourth photo, Little, as the man who had robbed him. Ellis testified that he recognized Little in part because the attacker had pronounced nasolabial folds. Little was the only person in the photo lineup with pronounced nasolabial folds. Little is forty years old, tall and thin, with gold teeth, and normally wears a goatee. The police did not conduct any investigation other than presenting Ellis with the photo lineup. The gun and the wallet were never recovered.
¶4, Little was indicted in April 2014.[1] The trial was held less than a month later on May 13, 2014. The morning of trial, the court denied a previously filed defense motion for a continuance requesting more time to find Little’s alibi witness. A subpoena for the witness was issued the day before trial. Little’s attorney also argued *313 in the motion to continue that her contact with her client had been limited due to his being committed to a transitional home by his parole officer, and that more time was needed to prepare a defense.
¶ 5. Police Chief Jackson testified for the State, recounting the course of the police investigation. Ellis testified for the State, identifying Little as the person who had robbed him at gunpoint. The defense did not call any witnesses. Several witnesses the defense had intended to call either did not show or could not be found in time for trial.
¶ 6. Little’s motion for a new trial was denied. He appeals.
DISCUSSION
¶7. The sole argument Little makes on direct appeal is that the evidence against him was so minimal and contradictory that his conviction was against the weight of the evidence, requiring reversal.[2] “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss. 2005). The Court sits as a “thirteenth juror,” and if it “disagrees with the jury’s resolution of the conflicting testimony,” the proper remedy is to grant a new trial, Id. “[T]he evidence should be weighed in the light most favorable to the verdict.” Id.
¶ 8. The testimony of an uncorroborated witness can be sufficient to sustain a conviction. Renfro v. State, 118 So.3d 560, 565 (¶ 22) (Miss. 2013); Pritchett v. State, 134 So.3d 857, 860-61 (¶ 11) (Miss. Ct. App. 2014) (finding the preponderance of the evidence did not weigh heavily against the jury’s verdict where the victim immediately recognized the defendant in a photographic lineup and had accurately described the defendant’s appearance to a detective prior to being shown the lineup). However, the reliability of an eyewitness identification is lessened when the description initially given to police is inconsistent with the subsequent lineup identification of a defendant. See Williams v. State, 98 So.3d 468, 472 (¶ 16) (Miss. Ct. App. 2012) (the factors used to determine reliability of a lineup identification include the accuracy of a witness’s prior description of the criminal).
¶ 9. In Bush, a victim initially told police that the masked man who|had robbed the convenience store she worked at had a slit above his left eye and that he might have a gold tooth. Bush, 895 So.2d at 841 (¶8). She later identified the defendant, Bush, as the robber, even though Bush did not have a scratch or scar above his left eye and did. not have a gold tooth. Id. The Mississippi Supreme Court stated that “[w]ere this conflicting evidence the only substantive proof the State presented to the jury, perhaps Bush’s argument for a new trial would have merit.” Id. at 845 (¶ 19). However, additional evidence against Bush included the eyewitness testimony of a coconspirator, a purported unrecorded confession Bush made to police, and a security video consistent with the version of events told by the victim, the coconspirator, and Bush in his purported confession. Id.
*314 ¶ 10. Similar to the testifying victim in Bush, the victim here gave an initial description of the assailant that was inconsistent with the defendant’s actual physical attributes, including age and build. But unlike in Bush, the State here presented no substantive proof to support Little’s guilt other than the victim’s testimony identifying Little as the assailant. We have here the exact -situation the Mississippi Supreme Court identified as potentially meritorious in Bush.
• ¶ 11. We find, on the facts of this case, that the weight of the evidence preponderates héavily against the verdict where the sole substantive proof presented at trial wá's the testimony of the victim identifying the defendant, and the victim’s initial description of the attacker to the police was inconsistent with) that identification. We therefore reverse and remand for a new trial.
CONCLUSION
¶ 12, Because the' only substantive proof presented at trial of Little’s guilt was the vicitim’s identification of Little, and that identification was inconsistent with the initial description given to police, we find that the verdict was against the weight of the' evidence and that a new trial is warranted. We therefore réverse and remand.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF CLAIBORNE COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLAIBORNE COUNTY.
LEE, C.J., IRVING, P.J., BARNES, ISHEE AND CARLTON, JJ„ CONCUR. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED-BY FAIR AND WILSON, JJ. JAMES, J., NOT PARTICIPATING.

. In January 2014, the grand jury initially no-billed the charges.

. The brief filed by Little’s attorney notes that several arguments, such as ineffective assistance of counsel, would be best preserved for postconviction-relief review in the event that Little's conviction were affirmed on direct appeal. Little filed a supplemental pro se brief raising multiple issues (including an alibi defense), all of which would not be appropriate for review on direct appeal.